## COMMISSION OF APPEALS.

CHARLES W. EASTWOOD and HENRY A. NICHOLS, plaintiffs and respondents, agt. JAMES McNULTY and JAMES MERRITT, defendants and appellants.

As between partners there are no profits until all losses and expenses are paid, no matter what the respective interests of the partners may be. Profits and losses, how ascertained on dissolution of a firm, and co-partnership articles in reference thereto, how construed.

*Argued September* 23, 1871.
*Decided January Term,* 1872.

APPEAL from a judgment of the general term of the supreme court of the first department, affirming a judgment entered on the report of John T. Hoffman, referee, in favor of the plaintiffs and against the defendants, for $4,572 96. The action was for an accounting upon the dissolution of a firm in which the respective parties were partners. The co-partnership articles contained two articles in reference to profits and losses, the 7th and 10th, as follows :

" VII. The parties hereto shall bear and share the expenses and the losses, if any, of said firm equally, share and share alike."

" X. Upon the dissolution or termination of the co-partnership, the property, assets, and effects thereof, shall be applied and divided as follows : The debts of said firm shall first be paid, then the capital contributed by each partner, with all interest due thereon, shall be paid in full, if there be sufficient for that purpose, and if sufficient, then the said assets, property, and effects, shall be applied to the payment of said capital and interest rateably, share and share alike ;

and after the payment in full of said debts and capital, the balance, residue, and remainder, being the net profits of said firm, shall be divided as follows : One-half of said net profits or balance, being fifty per cent. thereof, and hereby understood and taken as representing the services, skill, care, and attention of said partners about, in, and to the business of said firm to be equally divided between said partners, share and share alike, and the other half, or fifty per cent. of said balance or net profits to be divided as follows, said one-half or fifty per cent. being hereby taken and understood as representing the capital to be contributed by said co-partners to said concern : To said Charles W. Eastwood, five $83\frac{3}{5}$-100 per cent. or five $83\frac{4}{5}$-100 dollars of every fifty dollars, and to each of said other co-partners, McNulty, Merritt & Nichols, fourteen $72\frac{3}{5}$-100 per cent., or fourteen $72\frac{3}{5}$-100 dollars of every fifty dollars of said one-half profits or balance, provided, however, and it is hereby expressly understood and agreed by and between the parties hereto, that should either partner make default in contributing the capital so as aforesaid agreed to be contributed by him, and at or within the time or times agreed as aforesaid, the portion or share of said partner or partners so making default in said one-half or fifty per cent. net profits, representing said capital as aforesaid, shall be paid to and divided among such partner or partners as shall not make default in the payment of his share or portion of capital within the time so agreed upon as aforesaid, said profits to be divided as often as there shall be sufficient accumulated for that purpose."

DAVID McADAM, *for appellant.*
S. F. FREEMAN, *for respondent.*

HUNT, *Comr.*—As an original question of book-keeping, the plaintiffs are in the right.

There are no profits until all losses and expenses are paid. No matter what the proportions may be in which the part-

ners are to share in the profits, or to bear the losses; the losses and expenses on the one side, and the gains on the other, are first to be compared. If the gains exceed the losses and expenses, it is a case of profits, and profits are to be divided among the partners in the proportion agreed upon. If the losses and expenses exceed the gains, it is a case of loss, and the balance is to be borne by the partners as agreed upon. In each case the one side of the equation must be first deducted from the other, and the residue remaining is the subject to be disposed of.

The defendants insist that in this case there is a special agreement that the losses and expenses are to be borne equally by the parties. These losses and expenses, they then insist, must be deducted preliminarily, and paid one fourth by each partner and the residue only is subject to disposition under the articles of copartnership.

I cannot agree to this argument. I do not think the parties intended their agreement to be so construed. The seventh article and the tenth are to be construed together. If they are not in entire harmony, the latter must prevail, when the question arises upon a dissolution, as it does at this time. If there is any force in the defendants' argument, the seventh section is applicable to cases arising while the business is in progress. Thus, on the first day of May, it is ascertained that the firm has lost $1,000 by the dishonesty of a clerk, or the failure of a debtor, or that they have been compelled to pay $1,000 of duties on their importations. The defendant, McNulty, says this is a loss or expense now pressing upon us, and it must be at once provided for. I pay my one fourth, and I require that my partners should at once pay the remaining portions. That is not the present case. The present is the case of a dissolution of the partnership, and the order of proceeding in that case is specifically provided for by article ten. Thus it is provided that upon the dissolution or termination of the co-partnership, the property, assets and effects shall be divided as follows: The

debts of the said firm shall first be paid, then the capital contributed by each partner, with interest thereon, shall be paid in full; then the remainder shall be divided as follows: One-half thereof equally between the partners; *i. e.*, one-fourth to each; the remaining one-half according to the several amounts of capital furnished, as specifically set forth. There can be no doubt of the meaning of this article, to wit, that from and out of the assets and means in gross, the debts shall first be paid. From and out of the remainder the capital shall be returned. What still remains shall be divided into two equal half parts. Of these, one shall be distributed among the partners equally. The other shall be divided according to the capital furnished, as therein set forth. This section controls the disposition now to be made, and the referee did right in following it.

I do not intend to say that in any case the defendants' construction of the seventh article is a sound one. Its operation in a case like the present, where there are four partners, and where two contribute much the larger portion of the capital, would be unequal and unjust. By a charge of one fourth of the debts, and a credit of one sixth of the profits, a partner might soon be ruined, while the firm should prosper and grow rich. If a partner intelligently entered into such a bargain, he might be held to it. But where there is another article which might reasonably be held to give a different character to it, it should be decided in accordance with the latter provision. The question before us falls within the very words of the tenth article, being the case of a dissolution or termination of the partnership, and the decision has been in accordance with its provisions.

The defendants are jointly liable, for the reason that they took the assets of the firm, not as partners therein, but jointly as members of a new firm. McNulty and Merritt, the new concern, took all the property of the old firm, and assumed to distribute the property to those entitled to it.

The judgment should be affirmed with costs.

WM. H. LEONARD, *Comr.*—The defendants claim that the losses mentioned in the seventh article of the co-partnership agreement refer to the bad and uncollectable debts and assets of the business, and that a division of these "equally, share and share alike," as there agreed on, requires that an equal amount of them should be charged to each partner individually.

Such a construction is clearly repugnant to the subsequent provision of the tenth article. The provisions of that article relate to a division of the assets upon a dissolution or termination of the co-partnership. It directs that the capital contributed by each partner shall, after the payment of liabilities, be paid in full with interest, if there be sufficient, and if insufficient, rateably, share and share alike; and then provides for the division of the balance of assets remaining, or net profits. The result of the whole business was a small net gain upon the capital invested. According to the tenth article, the capital of each partner should be re-paid with interest, and the gains or profits should also be divided, giving each member a certain fixed proportion.

But by considering the word "losses" in the seventh article as referring to the bad debts, &c., the defendants, who, by the dissolution, were entrusted with the settlement of the business and the possession of the assets, divide the amount equally, and charge that proportion to each partner individually, thereby swelling the indebtedness of each to the business. The result of this construction is to absorb the whole capital of Eastwood as well as his share of the net profits. That is the provisions of the tenth article as to the assets remaining after the payment of all liabilities, is wholly inoperative as to Eastwood.

The word "losses," in the connection in which it occurs in the seventh article, is ambiguous. It does not necessarily refer to bad debts or depreciation of stock. The usual signification of "losses," when applied to the business of a partnership refers to the diminution or depreciation of

capital.   The losses by bad debts and depreciation of stock is chargeable to the whole business, usually in the "profit and loss account," for the purpose of determining whether there has been a gain or loss in the business.   By the tenth article, if the assets proved to be insufficient to return the capital upon dissolution, the amount remaining after the payment of liabilities was to be divided rateably.   It is clear and unambiguous that each partner was to be paid his capital if the assets were sufficient; and if insufficient, that the amount remaining was to be shared rateably upon a dissolution.

This examination shows conclusively that the construction of the defendants could not have been the understanding or the intention of the parties.   A reference to the phraseology makes it further evident, or probable, that the losses by bad debts, &c., should be borne by the business in the usual manner, charging them to profit and loss.   The words, "share and share alike," are used in the tenth article inappropriately.

In case the assets are insufficient to pay the capital in full they are to be applied "rateably, share and share alike." This is a contradiction in terms.   It seems quite probable that the words "equally, share and share alike," in the seventh article, are there used inconsiderately and inartificially, without expressing the real meaning or intention of the parties.

Whether we refer our construction of the intention of the parties to the repugnancy of the two articles or the ambiguity of the phraseology, we are warranted in holding, with the referee and the general term of the supreme court, that the bad debts and care chargeable to the business, and that the surplus, after the payment of liabilities, is to be divided according to the provisions of the tenth article.   The seventh article is ambiguous in its terms.   The tenth is definite and certain ; and if we refer the losses spoken of in the prior article to a depreciation of the capital, there is, then, no repugnancy.   The judgment should be affirmed with costs.

All concur; judgment affirmed.